## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ELIAS N. TADROS,

          **Plaintiff,**

          **v.**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

          **Defendant.**

No. 16 C 4819

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Elias N. Tadros filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on June 23, 2013, alleging that he became disabled on May 25, 2013, due to pain from a bulging disc in his back. (R. at 18, 219). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 18, 70–109, 130–50). On August 26, 2015, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 18, 37–69). The ALJ also heard testimony from Edward Pagella, a vocational expert (VE). (*Id.* at 18, 64–67).

The ALJ denied Plaintiff's request for benefits on November 12, 2015. (R. at 18–27). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since May 25, 2013, the alleged onset date. (*Id.* at 20). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and obesity are severe impairments. (*Id.* at 20–21). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 21).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that he can perform light work, except "he can never climb ladders, ropes

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

or scaffolds; can occasionally crouch, stoop, and climb ramps and stairs; and can frequently handle and finger bilaterally." (R. at 21). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 26). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including sorter, assembler, and packer. (*Id.* at 26–27). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 27).

The Appeals Council denied Plaintiff's request for review on March 18, 2016. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a

reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### IV. RELEVANT MEDICAL EVIDENCE

Plaintiff began experiencing back pain in 2003, but it became worse in May 2013. (R. at 327). He began treating with Sheldon Levine, D.O., in November 2012. (*Id.* at 323). On May 31, 2013, Plaintiff complained of severe back pain and was using a walker to ambulate. (*Id.* at 321). Dr. Levine found reduced range of motion and weakness on Plaintiff's left side and ordered an MRI. (*Id.*). Plaintiff underwent lumbar epidural steroid injections in June and August 2013. (*Id.* at 329, 381). On June 14, Plaintiff complained of pain in his lumbar spine, radiating down his left leg. (*Id.* at 320). Dr. Levine found reduced range of motion in the lumbar spine and difficulty walking. (*Id.*). On June 24, Plaintiff reported numbness in his left leg, pressure in his back, and problems walking. (*Id.* at 319). Dr. Levine prescribed Tramadol and Motrin. (*Id.*).

Ian Fisher, M.D., performed an MRI on June 25, 2013. (R. at 311–12). He concluded that Plaintiff has left foraminal/extraforaminal disc protrusion at L4-L5, increasing in size and encroaching on the L4 nerve root, as well as left foraminal stenosis. (*Id.* at 312). Dr. Fisher also found a small right paracentral disc protrusion at L5-S1, increasing slightly in size and encroaching mildly upon the right S1 nerve root sleeve. (*Id.*).

On June 28, Plaintiff complained that the pain was getting worse on his left side. (R. at 318). Dr. Levine reviewed the June 25 MRI, and found that Plaintiff could not lift his left leg. (*Id.*). On August 22, Plaintiff complained of constant pain in his lower back. (*Id.* at 317). Dr. Levine found reduced range of motion in the lumbar area

and ordered an EMG. (*Id.*). On September 6, Dr. Levine noted that the EMG was normal. (*Id.* at 316). On December 3, Dr. Levine noted that a myelogram indicated that Plaintiff had bulging discs at L3-L4 and L4-L5. (*Id.* at 398). On December 6, Plaintiff complained of an inability to sleep due to his back pain. (*Id.* at 397). On January 9, 2014, Caleb Lippman, M.D, performed a left sided L4-5 laminectomy with resection of epidural fat. (R. at 503–05).

James Welch, M.D., performed an MRI on January 21, 2014. (R. at 401–02). He concluded that Plaintiff has multilevel, degenerative disc disease. (*Id.* at 402). He also opined that enhancing nerve roots were likely postop in nature. (*Id.*). On January 30, 2014, Plaintiff complained of pain in both feet. (*Id.* at 395). He uses a walker to ambulate. (*Id.*).

On January 21, 2014, Dr. Levine completed a medical evaluation report. (R. at 469–74). He noted that Plaintiff uses a walker to ambulate. (*Id.* at 470). He opined that Plaintiff's impairments cause more than a 50% reduction in his capacity to walk, bend, stand, stoop, sit, turn, climb, push, pull, perform fine manipulation, and complete activities of daily living. (*Id.* at 472). He further opined that Plaintiff has suffered a 20–50% reduction in his capacity to perform gross manipulation and finger dexterity. (*Id.*). Dr. Levine concluded that Plaintiff can lift no more than ten pounds at a time. (*Id.*).

Plaintiff submitted an Adult Function Report on April 7, 2014. (R. at 279–86). He asserted that his impairments restrict his ability to lift, walk, climb, squat, sit, bend, kneel, stand, and reach. (*Id.* at 284). He can lift only five to seven pounds.

(*Id.*). His impairments also affect his memory and concentration. (*Id.*). He tries to minimize his pain by sitting on a firm seat, changing positions, and using an ice pad. (*Id.* at 280). Subsequent to his back surgery, he can ambulate only with the assistance of a walker. (*Id.* at 285).

A cervical MRI study was performed by Dr. Lippman on April 26, 2014. (R. at 476). Dr. Lippman found degeneration of the C5-6 intervertebral disc with generalized annular bulging and a more focal posterior central disc protrusion, which is effacing the subarachnoid space ventral to the cord and a small disc protrusion at C2-3. (*Id.*). Nevertheless, Dr. Lippman noted no significant facet arthrosis or foraminal stenosis. (*Id.*). On June 13, Dr. Lippman performed a C5-6 discectomy and fusion. (*Id.* at 521–23).

A lumbar MRI was performed by Dr. Fisher on May 28, 2014. (R. at 519). He found small to moderate-sized root paracentral disc protrusion with annular tear mildly compressing the descending right S1 nerve root at L5-S1, which had progressed from an earlier study. (*Id.*). He also found postsurgical changes present at L4-5—mild disc bulge and bony degenerative changes causing minimal to mild left foraminal stenosis, improved. (*Id.*). Dr. Fisher opined that degenerative disc disease was most pronounced at L5-S1, which had progressed slightly. (*Id.*).

On December 24, 2014, Hang Shen, M.D., examined Plaintiff and found mild paralumbar tenderness and mild bilateral ankle tenderness and swelling. (R. at 537). On January 8, 2015, Sunil John, M.D., found swelling in both of Plaintiff's ankles and tenderness in both feet. (*Id.* at 531). Dr. John diagnosed psoriatic arthri-

tis.[4] (*Id.* at 531, 534). On February 19, Dr. John found bilateral wrist joint tenderness, puffy hands with swelling of joints, bilateral ankle swelling with tenderness and warmth, and bilateral foot tenderness. (*Id.* at 555). On March 24, Dr. John examined Plaintiff and found reduced range of motion in both shoulder joints, bilateral wrist joint tenderness, bilateral puffy hands with swelling of joints, and bilateral foot tenderness. (*Id.* at 569). On May 20, Plaintiff exhibited mild paralumbar tenderness, reduced range of motion in both shoulder joints, bilateral wrist tenderness, bilateral puffy hands with swelling joints, and bilateral foot tenderness. (*Id.* at 566). On June 3, Plaintiff exhibited reduced range of motion in both shoulder joints, bilateral joint tenderness, bilateral puffy hands with swelling joints, puffy knees bilaterally, and bilateral foot tenderness. (*Id.* at 562–63). Dr. John diagnosed psoriasis, lower back pain, knee osteoarthritis, cervical myelopathy, and psoriatic arthropathy. (*Id.* at 563).

At the hearing, Plaintiff testified that he is unable to work because of chronic back pain, which surgery, exercise and physical therapy have failed to alleviate. (R. at 45–47). He has psoriatic arthritis that affects his knees, ankles, fingers, and elbows. (*Id.* at 48–49). Due to problems with his leg, he is unable to drive. (*Id.* at 51). He is able to help with some household chores but cannot clean, sweep, or vacuum. (*Id.* at 52–53).

---

[4] "Joint pain, stiffness and swelling are the main symptoms of psoriatic arthritis. They can affect any part of your body, including your fingertips and spine, and can range from relatively mild to severe." <http://www.mayoclinic.org/diseases-conditions/psoriatic-arthritis/home/ovc-20233896> (visited July 12, 2017).

Plaintiff further testified that he can stand for 15 minutes at a time before needing to walk for 5–15 minutes. (R. at 58). After walking, he needs to lie down for 30–60 minutes. (*Id.* at 54). He can sit for 25 minutes before needing to change positions. (*Id.* at 59). He is able to lift five to ten pounds at a time. (*Id.*). His arthritis causes him difficulty manipulating objects with his hands. (*Id.* at 60). He has trouble sleeping more than four to five hours at night and takes naps during the day. (*Id.* at 57, 62).

## V. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ erred in (1) rejecting Dr. Levine's opinion, (2) assessing Plaintiff's RFC, and (3) assessing the credibility of Plaintiff's subjective allegations. (Dkt. 16 at 7–20).

### A. The ALJ Did Not Properly Evaluate Dr. Levine's Opinion

In January 2014, Dr. Levine opined that Plaintiff's impairments cause more than a 50% reduction in his capacity to walk, bend, stand, stoop, sit, turn, climb, push, pull, perform fine manipulation, and complete activities of daily living, and a 20–50% reduction in his capacity to perform gross manipulation and finger dexterity. (R. at 472). He also concluded that Plaintiff needs a walker to ambulate and can lift only ten pounds. (*Id.* at 470, 472). In his decision, the ALJ gave Dr. Levine's opinion "little weight . . . as it is not supported by the objective medical evidence, which show minimal diagnostic imaging findings and normal examination findings including normal neurological findings." (*Id.* at 25).

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent

of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

The Court concludes that the ALJ's decision to give Dr. Levine's opinion only little weight is legally insufficient and not supported by substantial evidence. Dr. Levine's opinion was supported by the medical evidence. Dr. Levine began treating Plaintiff in November 2012 and examined him on at least ten occasions between Plaintiff's alleged onset date and the date of his opinion. (R. at 316–21, 395–398). Dr. Levine based his opinion on these examinations as well as the results of MRIs that he ordered in June 2013 and January 2014 and the myelogram that was performed around December 2013. (*Id.* at 311–12, 398, 401–22). During his examinations, Dr. Levine found reduced range of motion in Plaintiff's lumbar spine, difficulty walking, and observed that Plaintiff needs a walker to ambulate. (*Id.* at 317, 320, 321). In June 2013, Plaintiff could not lift his left leg. (*Id.* at 318). Plaintiff consistently complained of chronic back pain, numbness, and difficulty ambulating. (*Id.* at 318–21, 397). The MRIs indicated that Plaintiff had disc protrusion at L4-5, increasing in size and encroaching on the L4 nerve root; left foraminal stenosis; right paracentral disc protrusion at L5-S1, increasing in size and encroaching upon the right

S1 nerve root; and degenerative disc disease. (*Id.* at 311–12, 401–02). Dr. Levine was also aware of the left-sided L4-5 laminectomy with resection of epidural fat that Dr. Lippman performed on January 9, 2014. (*Id.* at 395; *see id.* at 503–05).

Further, when an ALJ determines to not accord controlling weight to a treating physician, he must address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. Social Security Ruling (SSR) 96-2p.[5] SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) Here, the ALJ failed to address any of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Levine had a relevant specialty. The ALJ must "sufficiently account [ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). The ALJ did not do so here, preventing this Court from assessing the reasonableness of the ALJ's decision in light of the factors indicated in 20 C.F.R. § 404.1527. For these reasons, the ALJ did not provide substantial evidence for rejecting Dr. Levine's opinion, which is an error requiring remand.

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

**B. The ALJ's Subjective Symptom Evaluation Is Patently Wrong**

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding

with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's subjective symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support the claimant's subjective symptoms. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons" for the subjective symptom evaluation; "the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omit-

ted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

Plaintiff testified that he can stand for 15 minutes at a time before needing to walk for 5–15 minutes. (R. at 58). After walking, he needs to lie down for 30–60 minutes. (*Id.* at 54). He can sit for 25 minutes before needing to change positions. (*Id.* at 59). He is able to lift only five to ten pounds at a time. (*Id.*). His arthritis causes him difficulty manipulating objects with his hands. (*Id.* at 60). He has trouble sleeping more than four to five hours at night and takes naps during the day. (*Id.* at 57, 62).

In his decision, the ALJ found Plaintiff's allegations "not fully credible":

> While [Plaintiff] noted in his function report that he uses a walker that was prescribed, the medical records do not show that [Plaintiff] has persistent gait difficulties that require the use of any assistive devices on an ongoing basis. Neurological findings, including strength, have been noted as normal. Even [Plaintiff's] physician noted that [Plaintiff's] diagnostic imaging reports were "relatively unimpressive." However, he has continued to complain of pain since his back and neck surgeries, which has been taken into consideration. The effects of his obesity have been taken into consideration in determining his [RFC]. While [Plaintiff] testified that he naps for 30 to 60 minutes during the day, there is no indication in his medical records that any of his severe impairments cause limitations that would require him to nap during a workday.

(R. at 24).

After careful consideration, none of the reasons provided by the ALJ for rejecting Plaintiff's subjective symptoms are legally sufficient or supported by substantial evidence. First, Plaintiff submitted his function report in April 2014, less than three months after his back surgery and stated that his use of a walker was related there-

to. (R. at 285). Around this time, Plaintiff consistently reported needing a walker to ambulate and examinations found a reduced range of motion. (*Id.* at 317–21, 395; *see also id.* at 470 (Dr. Levine reporting in January 2014 that Plaintiff uses a walker to ambulate)).

Second, while Dr. Lippman found in December 2013 that Plaintiff's MRIs and CT myelograms were "relatively unimpressive," he acknowledged that Plaintiff was in severe pain and opined that the pain may be relieved by back surgery, which he performed in January 2014. (R. at 503–05, 509–10). Further, many other diagnostic tests confirmed physical impairments that could reasonably be expected to produce Plaintiff's subjective pain symptoms. SSR 16-3p, at *2. For instance, Dr. Levine consistently found reduced range of motion in the lumbar region. (R. at 317–21). In January 2014, Dr. Welch performed an MRI and opined that Plaintiff has multi-level, degenerative disc disease. (*Id.* at 402). A cervical MRI study was performed in April 2014, which found degeneration of the C5-6 intervertebral disc with bulging and protrusion. (*Id.* at 476). In May 2014, Dr. Fisher performed a lumbar MRI and found disc protrusion and an annular tear compressing the nerve root, which had progressed from an earlier study. (*Id.* at 519). He opined that Plaintiff has degenerative disc disease, which was getting worse. (*Id.*). Dr. John diagnosed psoriatic arthritis in January 2015 and, in March, found reduced range of motion in both shoulder joints, bilateral wrist joint tenderness, bilateral puffy hands with swelling of joints, and bilateral foot tenderness. (*Id.* at 531, 534, 569). In June 2015, Dr. John examined Plaintiff and diagnosed psoriasis, lower back pain, knee osteoarthritis,

cervical myelopathy, and psoriatic arthropathy. (*Id.* at 563). Thus, there are multiple "medically determinable physical . . . impairment(s) that could reasonably be expected to produce [Plaintiff's] symptoms, such as pain." SSR 16-3p, at *2. Finally, given Plaintiff's difficulty sleeping due to chronic back and joint pain, it is not unusual that he would need to take naps during the day. (R. at 57, 62, 397).

Moreover, without addressing the requisite factors outlined in SSR 16-3p and its predecessor SSR 96-7p, such as daily activities, level of pain or other symptoms, aggravating factors and other limitations, the ALJ "failed to build a logical bridge from the evidence to his conclusion." *See Villano,* 556 F.3d at 562; SSR 16-3p, at *7. The Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms was not supported by substantial evidence, requiring remand. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## C. Other Issues

Because the Court is remanding to reevaluate the weight to be given to Dr. Levine's opinion and Plaintiff's subjective symptoms, the Court chooses not to address Plaintiff's other argument that the ALJ erred in his RFC assessment. (Dkt. 16 at 11–16). However, on remand, after determining the weight to be given the Dr. Levine's opinion, the ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the

relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse is **GRANTED**, and Defendant's Motion for Summary Judgment [19] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R :

Dated: July 20, 2017

MARY M. ROWLAND
United States Magistrate Judge